IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

CHARLES S. OAKES,

       Plaintiff,

v.                                                                  No. 2:22-cv-00224-SMV-GJF

HONEYWELL INTERNATIONAL, INC.,
a Delaware Corporation; NATIONAL TECHNOLOGY
AND ENGINEERING SOLUTIONS OF
SANDIA, LLC, a Delaware Corporation
and wholly-owned subsidiary of Honeywell
International, Inc.; CAROL ADKINS; and
PAUL SHOEMAKER,

       Defendants.

## MEMORANDUM BRIEF IN SUPPORT OF MOTION TO DISMISS

Defendants National Technology and Engineering Solutions of Sandia, LLC ("Sandia"),

Honeywell International, Inc. ("Honeywell"), Carol Adkins, and Paul Shoemaker (collectively, the

"Individual Defendants") submit this Memorandum Brief in Support of their Motion to Dismiss.

### I.    INTRODUCTION

Plaintiff Charles S. Oakes is a former limited-term employee of Sandia.  *See* Complaint,

Exhibit A to Notice of Removal, Doc. No. 1, ¶ 34. Sandia manages and operates Sandia National

Laboratories pursuant to a contract with the United States Department of Energy's ("DOE") National

Nuclear Security Administration ("NNSA").  *Id.* ¶ 3.  Sandia is a subsidiary of Honeywell and

employed Carol Adkins and Paul Shoemaker at times material to this action.  *See id.*, ¶¶ 2, 4-5.

Plaintiff's claims in this action arise out of Sandia's termination of his employment in 2019.

*Id.* ¶ 118.  Sandia's principal headquarters are located on Kirtland Air Force Base.  *See* Declaration

of Paul Shoemaker, Exhibit C to Notice of Removal, ¶ 4.  During his time at Sandia, Plaintiff

worked at a remote site in Carlsbad, New Mexico, supporting DOE's Waste Isolation Pilot Plant

("WIPP").  *Id.*, ¶¶ 3, 34.  Plaintiff contends that he was terminated for raising concerns regarding allegedly unreliable science.  *See id.*, ¶ 120.  He asserts state-law claims for retaliatory discharge in violation of public policy, retaliatory termination in violation of implied contract, and racketeering.

Plaintiff cannot, however, maintain any of these claims due to application of the federal enclave doctrine.  Under the doctrine, state-law claims arising on a federal enclave are not cognizable if the state law underlying the claims was adopted after the enclave was created. Federal courts in New Mexico considering claims against Sandia have adopted the view that state-law employment claims are subject to the federal enclave doctrine if the claims implicate employment practices on the enclave.  Although Plaintiff worked at a remote site, his claims stem from Sandia's employment practices, and other actions, on the federal enclave.  Because all of Plaintiff's state-law claims were recognized after Kirtland Air Force Base was established as a federal enclave in 1954, Plaintiff's Complaint must be dismissed in its entirety.

Plaintiff's claims are also subject to dismissal for independent reasons.  First, Plaintiff's claims against Honeywell must be dismissed for lack of personal jurisdiction.  Honeywell is a Delaware Corporation with a principal place of business in North Carolina.  *See* Declaration of David Johnson, attached hereto as Exhibit A, ¶ 5*; see also* Complaint, ¶ 3.  Plaintiff has apparently named Honeywell as a defendant solely because Sandia is its subsidiary, but he has failed to include any allegations capable of establishing that Sandia's contacts with New Mexico and this action may be attributed to Honeywell for purposes of establishing personal jurisdiction over Honeywell.

Honeywell and Sandia operate at arm's length, maintaining all corporate formalities. Johnson Declaration, ¶¶ 10-13.  Moreover, Sandia has its own management team, responsible for all operations, including human resources.  Sandia adopts and implements its own company policies

and handbooks, which are distributed by its own Human Resources Department. *Id.* ¶ 15. Honeywell and Sandia maintain separate work forces and do not share employees. *Id.* ¶ 14. Of particular significance here, Sandia has complete discretion in making personnel decisions, including all decisions to hire, terminate, discipline, and direct performance of its employees. *Id.* ¶¶ 14, 21. Honeywell thus did not employ Plaintiff. Plaintiff was not subject to Honeywell's employee handbook or policies. *Id.* ¶ 20. Nor did Honeywell pay Plaintiff or participate in any decisions concerning Plaintiff's employment. *Id.* ¶¶ 20, 22.

Because Honeywell and Sandia are separate entities operating independently, any connections Honeywell does have with New Mexico have no relationship to this litigation. Furthermore, Honeywell does not have continuous and systematic contacts with New Mexico such that it may be subject to general jurisdiction in this state. This Court must accordingly dismiss Plaintiff's claims against Honeywell for lack of personal jurisdiction.

In the alternative, the majority of Plaintiff's claims must be dismissed under Rule 12(b)(6). Plaintiff has failed to plead any facts upon which the Court could conclude that Honeywell was Plaintiff's employer and has thus failed to state claims for retaliatory discharge or breach of implied employment contract against Honeywell. Those claims fail for similar reasons to the extent they are asserted against the Individual Defendants. The Individual Defendants did not employ Plaintiff, and were not parties to, and cannot be held liable under, any implied employment contract with Plaintiff. Finally, Plaintiff's racketeering claim does not state a claim for relief against any of the defendants.

## II.     PLAINTIFF'S CLAIMS MUST BE DISMISSED UNDER THE FEDERAL ENCLAVE DOCTRINE

### A.     The Federal Enclave Doctrine

A federal enclave is created when a state cedes jurisdiction over land within its borders to the federal government and Congress accepts that cession. *Allison v. Boeing Laser Tech. Servs.*,

689 F.3d 1234, 1235 (10th Cir. 2012).  "[W]hen the United States acquires with the consent of the state legislature land within the borders of that State the jurisdiction of the Federal Government becomes exclusive."  *Id*. at 1236 (internal quotation marks and ellipsis omitted).  Thus,"state law that is adopted after the creation of the enclave generally does not apply on the enclave."  *Id*. at 1235 (citation omitted).  "[O]nly state law existing at the time of the acquisition remains enforceable, not subsequent laws."  *Id*. at 1237 (internal quotation marks and citation omitted).  This rule applies equally to state statutory claims and to common-law causes of action.  *Id*. at 1240.  If a plaintiff asserts state-law claims arising on a federal enclave that did not exist when the enclave was created, the claims are properly dismissed.  *See id*. at 1243-1244.

Application of the federal enclave doctrine is a matter of jurisdiction, and the Court may therefore consider materials outside the pleadings when ruling on the motion.  *See Smelser v. Sandia Corp.*, 2018 U.S. Dist. Lexis 54037, *10-11 (D.N.M. 2018) (unpublished) ("[T]o the extent Defendants move to dismiss under Rule 12(b)(1) due to . . . applicability of the federal enclave doctrine, they mount a factual challenge to the existence of subject matter jurisdiction. Accordingly, the Court may consider evidence outside of the pleadings to decide these issues."); *Benavidez v. Sandia Nat'l Labs.*, 212 F.Supp.3d 1039, 1093-1094 (D.N.M. 2016) (considering declarations attached to notice of removal in connection with dismissing claims pursuant to the federal enclave doctrine).

### B.    Sandia Operates on a Recognized Federal Enclave

Sandia is headquartered on Kirtland Air Force Base.  *See* Declaration of Paul Shoemaker, Exhibit C to Notice of Removal, Doc. No. 1, ¶ 4.  Kirtland Air Force Base has been held by both this Court and the Tenth Circuit Court of Appeals to be a federal enclave subject to exclusive federal legislative authority.  *See, e.g., Allison*, 689 F.3d at 1236 ("Kirtland Air Force Base is a

federal enclave"); *Benavidez*, 212 F.Supp.3d at 1096 ("The federal enclave at issue in this case -- Kirtland Air Force Base -- was established in 1954."); *Bisconte v. Sandia Nat'l Labs.*, 2021 U.S. Dist. LEXIS 184146, *4 (D.N.M.) (unpublished) ("[T]he federal enclave doctrine applies to Sandia National Labs, because it is predominantly located on Kirtland Air Force base."); *Kennicott v. Sandia Corp.*, 314 F. Supp. 3d 1142, 1172 n.22 (D.N.M. 2018) (noting that Sandia had the "bulk of its offices and employees on a federal enclave").

State-law employment claims asserted by employees of Sandia[1] have accordingly been dismissed under the federal enclave doctrine.  *See Benavidez.*, 212 F. Supp. 3d at 1091-97 (dismissing state-law claims pursuant to federal enclave doctrine when Plaintiff worked on Kirtland Air Force Base); *Ochieno v. Sandia Nat'l Labs.*, 2019 U.S. Dist. Lexis 9967, *4-5 (D.N.M. 2019) (unpublished) (dismissing state employment law claims when Plaintiff worked on Kirtland Air Force Base); *Forslund v. Nat'l Tech. & Eng'g Sols. of Sandia, LLC*, 2020 U.S. Dist. Lexis 65918, *4 (D.N.M. 2020) (unpublished) (dismissing state-law claim for intentional infliction of emotional distress because "it arose on a federal enclave").

### C.     The Federal Enclave Doctrine Applies Even Though Plaintiff Worked at a Remote Site

Sandia anticipates that Plaintiff may take the position that the federal enclave doctrine does not apply because he physically worked at Sandia's remote site in Carlsbad.  But there is no reasonable basis upon which the Court should conclude that Plaintiff—unlike the vast majority of employees of Sandia—may assert state-law claims against Sandia, simply because his office happened to be physically located outside the federal enclave.

---

[1] Sandia National Laboratories has been operated by different contractors over the years.  Each of the District of New Mexico cases discussed was brought against the legal entity operating Sandia National Laboratories.

The federal enclave doctrine instead applies broadly to claims implicating Sandia's practices and actions on the federal enclave.  In fact, courts in this district have applied the federal enclave doctrine to state-law employment claims against Sandia despite efforts to distance the claims from Kirtland Air Force Base.  For example, in *Smelser*, 2018 U.S. Dist. Lexis 54037, \*10-11, the plaintiff argued that Sandia's Human Resources Department, which was involved with her case, was at the time located outside the air force base.  *Id*. at \*7.  The Court rejected that argument, noting that "the critical inquiry" was "whether the conduct or employment decision at issue . . . reflects Defendants' employment practice on the enclave."  *Id*. at \*8 (internal quotation marks omitted).  The Court concluded that, even though the Human Resources Department was not located on the base, "any decisions Sandia's human resources department may have undertaken reflected Defendants' employment practices on the enclave."  *Id*.  It then dismissed the state-law claims that were not recognized before Kirtland Air Force Base became a federal enclave.  *Id*.

In *Kennicott*, 314 F. Supp. 3d at 1151, the plaintiffs asserted state statutory employment claims against Sandia.  Sandia moved to dismiss pursuant to the federal enclave doctrine, asserting that the doctrine applied because the plaintiffs worked on Kirtland Air Force Base and their alleged injuries occurred there or, alternatively, because the relevant employment policies were made and approved on the base and the decisions underlying the plaintiffs' claims were made on the base.  *Id*. at 1153-54.  The plaintiffs argued that it had not been established that all employees covered by the class-action complaint worked on the federal enclave.  *Id*. at 1151.  They also argued that Sandia conducted human resources functions at locations outside the enclave, and that a dispute existed regarding where the employment decisions at issue were made.  *Id*. at 1151-52, 1155.

The court dismissed the state-law claims of the three named plaintiffs, who "were largely, if not entirely, working on Kirtland Air Force Base" when the alleged discrimination occurred.  *Id*.

at 1146, 1172, 1178.  It concluded that "the federal enclave doctrine applies to state employment discrimination claims when the plaintiffs work and are harmed on the federal enclave, even if the employer makes allegedly discriminatory decisions elsewhere." *Id.* at 1165.  According to the Court, in cases of employment on the enclave, there was no need, for "[t]he silliness and burden of deciding where decisions were made, when all the harm occurs on the federal enclave." *Id.* at 1172.  More significantly to this case, the Court added:

> On the other hand, if the tortious employment decisions were made on the federal enclave and injured a plaintiff who does not work and is not on the federal enclave, there is no sound reason to not give the employer the benefit and protection of the federal enclave doctrine. . . . Thus, the only place where the federal enclave doctrine should not protect an employer like Sandia Labs, which is operating largely on a federal enclave, is where the employer makes the decision off the federal enclave and the plaintiff was also off the federal enclave. . . . [T]he federal enclave doctrine should apply to an employer with the bulk of its offices and employees on a federal enclave.

*Id.* at 1172 n.22.

Most recently, in *Bisconte*, 2021 U.S. Dist. Lexis 184146, *4, the Court likewise concluded that "the federal enclave doctrine applies to Sandia National Labs, because it is predominantly located on Kirtland Air Force base."  In that case, the Court rejected an argument that the federal enclave doctrine did not apply because the plaintiff worked remotely off Kirtland Air Force Base. The Court instead concluded that "that the federal enclave doctrine may apply even in cases of remote workers." *Id.* at *8.  The Court was also not persuaded by the plaintiff's argument that she signed security clearance paperwork off the enclave because that did "not tend to show that the relevant decision making, offending policies, or locus of harm, occurred off  the federal enclave. *Id.* at *9-10.  The Court summarized that "that the federal enclave doctrine applies because (1) the

place where the wrong occurred was on Kirtland Air Force Base, and alternatively, (2) the employer's decision making and policies occurred on Kirtland Air Force Base." *Id.* at *4.[2]

Taken together, these three decisions indicate that an employee's physical work location is at most one factor to consider when determining whether the federal enclave doctrine applies. The doctrine applies to claims made by plaintiffs working off the enclave if the employer primarily operates on the enclave, or if the claims implicate employment practices on the enclave.

This approach is consistent with the policies underlying the doctrine. *Benavidez*, 212 F. Supp. 3d at 1093 (holding that the Enclave Clause of the Constitution, U.S. Const. art. I, § 8, cl. 17, and the consequent grant of jurisdiction to federal courts serve to "prevent[ ] state judicial interference with matters likely to involve substantial federal interests") (internal quotation marks and citation omitted); *see also, e.g., Kelley v. Lockheed Martin Servs. Grp.*, 25 F. Supp. 2d 1, 6 (D.P.R. 1998) ("Congress maintains exclusive legislative control over the federal enclaves so that the Congress can exercise sole control over the federal functions performed within the enclaves.").

This action, just like others asserted against Sandia, involves substantial federal interest. This Court should accordingly decline to make an artificial distinction that might limit the doctrine's applicability based on the location of a particular employee's office.

### D.    The Federal Enclave Doctrine Applies Here

This action concerns Sandia's employment practices on the enclave. Although Plaintiff worked at Sandia's remote Carlsbad site, Plaintiff was subject to the policies and procedures applicable to all Sandia employees, the majority of whom work on the enclave. *See* Adkins

---

[2] The District of New Mexico is not the only Court to have rejected efforts to limit the federal enclave doctrine based on the plaintiff's work location. *See Taylor v. Lockheed Martin Corp.*, 92 Cal. Rptr. 2d 873, 879 (Cal. Ct. App. 2000) (applying federal enclave doctrine where relevant employment decisions were made on enclave, even though employee was not working on the enclave when terminated; "As the employee of a contractor operating on the enclave, Taylor's claims are governed by the enclave's law.").

Declaration, Exhibit D to Notice of Removal, Doc. No. 1, at ¶ 10; Shoemaker Declaration, Exhibit C to Notice of Removal, Doc. No. 1, at ¶¶ 4, 7, 15.  Those policies and procedures are generally adopted and enforced on the enclave.  Adkins Declaration, ¶ 11; Shoemaker Declaration, ¶ 16.

Plaintiff worked with a group of employees that was part of a larger group of employees, *i.e.*, Center 8800, working on Kirtland Air Force Base, and directed by Defendant Carol Adkins, who herself physically worked on Kirtland Air Force Base.  Adkins Declaration, ¶¶ 3-7; Shoemaker Declaration, ¶¶ 10-12.  The Carlsbad group was an integral part of Center 8800, which was directed by Carol Adkins, and Plaintiff was just like any other employee of Center 8800.  *Id.* ¶ 13; Adkins Declaration, ¶¶ 8-9.  The Carlsbad group was in regular communication with their coworkers in Center 8800 on the enclave.  *See id.* ¶ 8; Shoemaker Declaration, ¶¶ 13-14.

The Carlsbad group was connected to Kirtland Air Force Base in other ways.  For example, the lease of office space in Carlsbad was handled by facilities personnel working on the base.  *Id.* ¶ 17; Adkins Declaration, ¶ 12.  Resources like the Employee Labor and Relations Department would also address any issues on the Carlsbad remote site.  *See id.* ¶¶ 15-16.

The close integration of the remote Carlsbad site and Sandia's principal operations on Kirtland Air Force Base is evident here in the decisions made concerning Plaintiff's employment. Plaintiff alleges that Carol Adkins and his "chain of command" were involved in the decision to terminate his employment.  *See* Complaint, ¶¶ 125-126 ("Defendants Shoemaker and Adkins met or conferred about the need to terminate Oakes" and Oakes was terminated "with the knowledge and approval of Adkins, if not at her direction."); *id.* at ¶¶ 118-119 (noting attendance of the "captain of SNL's security force" at the termination meeting and "knowledge throughout the command chain").  Plaintiff is correct that Adkins and other Sandia professionals participated in the decision and implementation of the decision to terminate Plaintiff's employment.  Carol

Adkins and Paul Shoemaker discussed the issue, sought legal advice from counsel, and involved resources including the Employee and Labor Relations Department, and Security Department.  *See* Shoemaker Declaration, ¶¶ 18-21; Adkins Declaration, ¶¶ 13-17.  Significantly, with the exception of Paul Shoemaker, these individuals participated in the discussions concerning termination of Plaintiff's employment on Kirtland Air Force Base.  *See id.*; Shoemaker Declaration, ¶¶ 18-21. The decision to terminate Plaintiff's employment was indisputably made on the federal enclave.

Furthermore, Plaintiff's claims are based on the contract between Sandia and NNSA,  under which Sandia manages and operates Sandia National Laboratories.  *See* Complaint, ¶¶ 132-138. Count III of the Complaint is premised on Plaintiff's (unfounded) allegations that Defendants misrepresented compliance with that contract to the United States Government, and improperly obtained payments from the United States Government under that contract.  *See id.* ¶¶ 160-170. Such allegations concerning Sandia's performance of the contract with NNSA necessarily implicate Sandia's broader operations, which are centered on Kirtland Air Force Base.

Because Plaintiff's claims involve substantial federal interests, are asserted against an employer operating primarily on a federal enclave, concern Sandia's employment practices on the enclave, and arise out of an employment decision made on the enclave, the federal enclave doctrine applies here.  *See Kennicott*, 314 F. Supp. 3d at 1172 n. 22; *Benavidez*, 212 F. Supp. 3d at 1093; *Bisconte*, 2021 U.S. Dist. Lexis 184146, *4; *Smelser*, 2018 U.S. Dist. Lexis 54037, *8.

### E.    All of Plaintiff's Claims Are Barred By The Federal Enclave Doctrine

Each of Plaintiff's claims is based on New Mexico law adopted after Kirtland Air Force Base was established as a federal Enclave in 1954, and, therefore, must be dismissed.

In Count I, Plaintiff asserts a claim for retaliatory discharge in violation of public policy (and as an exception to his acknowledged at-will employment).  Yet, as the Tenth Circuit observed

in *Allison*:  "[I]n New Mexico the tort of retaliatory discharge was not recognized until thirty years after the cession of the Base. . . . [T]he law of New Mexico allowed for termination at will in 1954, and retaliation was not an implied exception to that rule until years later."  689 F.3d at 1244.

In Count II, Plaintiff asserts a claim for retaliatory termination in violation of implied contract.  That claim is likewise foreclosed by *Allison*.  *See id.* ("New Mexico did not recognize an implied contract for employment arising from an employment manual until 1980.  Allison attempts to avoid this problem by claiming New Mexico common law generally allowed implied contracts prior to 1954.  But that does not change the fact that at the time of cession, the New Mexico courts did not recognize an implied *employment* contract . . . .") (internal citations omitted).

Finally, in Count III, Plaintiff asserts a claim for violation of New Mexico's Racketeering Act, NMSA 1978, §§ 30-42-1, *et seq.*  That statute was not enacted until 1980—long after Kirtland Air Force Base was established as a federal enclave.  *See* NMSA 1978, § 30-42-1 (1980).

Thus, as in *Allison*, "none of the employment causes of action raised by [Plaintiff] in his complaint existed when the federal government established Kirtland Air Force Base.  [Plaintiff] would have had no cause of action in 1954, and he has no cause of action now."  *See Allison*, 689 F.3d at 1244.  Plaintiff's claims must therefore be dismissed under the federal enclave doctrine.

### III.   THE COURT LACKS PERSONAL JURISDICTION OVER HONEYWELL

Plaintiff's claims against Honeywell must also be dismissed for lack of personal jurisdiction.  Plaintiff bears the burden of establishing that personal jurisdiction over Honeywell exists.  *See Rockwood Select Asset Fund XI (6)-1, LLC v. Devine, Millimet & Branch*, 750 F.3d 1178, 1180 (10th Cir. 2014).  To establish that Honeywell is subject to personal jurisdiction in this action, Plaintiff first must show that Honeywell has sufficient "minimum contacts" with New Mexico such that Honeywell "purposefully avail[ed]" itself of the benefits of New Mexico law and "should

reasonably anticipate being haled into court there." *See Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 473-76 (1985).  Second, Plaintiff also must show that the exercise of personal jurisdiction over Honeywell "does not offend 'traditional notions of fair play and substantial justice.'" *See World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 292 (1980).

Supreme Court decisions confirm that personal jurisdiction over non-resident corporate defendants like Honeywell requires two separate due process analyses—whether the Court has general jurisdiction and whether the Court has specific jurisdiction.  *See Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 923-24 (2011).  A court only has general jurisdiction over a defendant that has "continuous corporate operations within a state [that are] so substantial and of such a nature as to justify suit against it on causes of action arising from dealings entirely distinct from those activities." *Id.* at 924.  A court only has specific jurisdiction over a defendant if the defendant has engaged in "continuous and systematic" activity in the forum state and if "the suit 'aris[es] out of or relate[s] to the defendant's contacts with the forum.'" *Id.* at 923-24.

## A.     The Court Lacks General Jurisdiction Over Honeywell

To establish general jurisdiction over Honeywell, Plaintiff must show that Honeywell's "affiliations with the state are so 'continuous and systematic' as to render [it] essentially at home in the forum state." *Daimler AG v. Bauman*, 571 U.S. 117, 138-39 (2014).  In *Daimler*, the Supreme Court emphasized the narrow scope of general jurisdiction, holding that a corporation ordinarily is considered to be "at home" only in the state where it is incorporated or where it maintains its principal place of business.  *Id.* at 137.  Only in an "exceptional case" would it be permissible to exercise general jurisdiction over a corporate defendant outside of these paradigmatic forums.  *Id.* at 137 n.19; *see also BNSF Ry. Co. v. Tyrrell*, 137 S. Ct. 1549, 1558-59 (2017).

Honeywell is "at home" in North Carolina, where it is headquartered, and Delaware, its state of incorporation.   Johnson Declaration, attached hereto as Exhibit A, ¶ 5.  New Mexico is not the center of its activities.  *See id.* ¶¶ 5-6.  And, a "corporation that operates in many places can scarcely be deemed at home in all of them."  *Daimler*, 571 U.S. at 139 n.20; *see also BNSF Ry. Co.*, 137 S. Ct. at 1558 (holding train company's 2,000+ miles of track and more than 2,000 employees in Montana were insufficient to establish general jurisdiction).

Plaintiff cannot show this to be an "exceptional case" in which the Court should exercise general jurisdiction over an out-of-state corporation.

### B.     The Court Lacks Specific Jurisdiction Over Honeywell

Specific jurisdiction turns on "the relationship among the defendant, the forum, and the litigation." *Walden v. Fiore*, 571 U.S. 277, 283-84 (2014).  To establish that this Court has specific jurisdiction over Honeywell, Plaintiff must show:  (1) that Honeywell "purposefully avail[ed] itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws," and (2) that Plaintiff's suit arises out of or relates to Honeywell's contacts with the forum.  *Goodyear*, 564 U.S. at 923-24.  Neither of these requirements is met here.

Plaintiff cannot establish that this suit arises out of any contacts Honeywell has with New Mexico.   Plaintiff's Complaint includes only conclusory allegations concerning the purported involvement of Honeywell in events at issue.  Plaintiff makes the bare allegations that Honeywell "controls and manages" Sandia, and that Carol Adkins and Paul Shoemaker were agents of Honeywell.  *See* Complaint, ¶¶ 2, 6.  Plaintiff then purports to include Honeywell in its allegations against Sandia, asserting that "the terms NTESS, Sandia, and SNL are used interchangeably to reference NTESS as operator and manager of the SNL, and by extension, Honeywell as the sole owner, controller and manager of NTESS.  *See id.* ¶ 3 n.1.  Plaintiff seeks to hold Honeywell liable

for acquiescing in or failing to oversee Sandia, and contends that Honeywell may be held liable for the conduct of the Individual Defendants under the doctrine of *respondeat superior.  Id.* ¶¶ 141-142.

Importantly, however, Sandia's contacts with New Mexico cannot be imputed to Honeywell for purposes of establishing jurisdiction.  Rather, "[a]s a general rule, the mere relationship of parent corporation and subsidiary corporation is not in itself a sufficient basis for subjecting both to the jurisdiction of the forum state, when one is a nonresident and is not otherwise present or doing business in the forum state." *Cruz v. Lovelace Health Sys., Inc.*, 2019 WL 4016281, *9 (D.N.M.) (unpublished) (quoting *Smith v. Halliburton Co.*, 1994-NMCA-055, ¶ 8, 879 P.2d 1198).  "This is the case even if the subsidiary doing business in the state is wholly owned by the parent company over whom personal jurisdiction is sought, because '[New Mexico courts] will not subject passive investors to [their] jurisdiction solely on the basis of their investment.'" *Berry v. Bryant*, 2012 WL 12819204, *4 (D.N.M.) (unpublished) (internal citations omitted).

To rely on Sandia's connections to New Mexico and this action as a basis for establishing personal jurisdiction, Plaintiff would have to establish a basis upon which the Court could pierce the corporate veil and find Sandia to be a mere instrumentality of Honeywell, or otherwise find Sandia to be an agent of Honeywell.  *See Jemez Agency, Inc. v. Cigna Corp.*, 866 F. Supp. 1340, 1343 (D.N.M. 1994); *Miceli v. Southwind Mgmt. Corp.*, 2021 WL 1122658, *3 (D.N.M.) (unpublished); *see also Daimler*, 571 U.S. at 135 n.13.

Plaintiff has made no such allegation in his Complaint, and there is overwhelming evidence that Honeywell and Sandia have separate corporate personalities.  *See* Johnson Declaration, Exhibit A.  Honeywell and Sandia do not share offices and do not have overlapping employees. Sandia maintains its own management team that runs its day-to-day operations, including accounting, human resources, and others. *Id.* ¶¶ 11, 13-15.  Honeywell and Sandia have separate

accounting systems, and Honeywell does not pay any salaries or other expenses of Sandia.  *Id.*
¶¶ 12, 14.  Sandia is sufficiently capitalized on its own to pay its bills or other debts.  *Id.* ¶ 12.
Honeywell and Sandia do not share any common directors or officers.  *Id*. at ¶ 14[3]   Honeywell
and Sandia do not commingle funds, and Sandia has its own bank accounts.  *Id.* ¶ 12.  Sandia also
has its own corporate records, including Articles of Organization, bylaws, meeting minutes, tax
returns, accounting records, bank statements, human resource files, policies, manuals, and
handbooks.  *Id*. ¶ 13.   Honeywell is not a party to the contracts that Sandia enters into with its
customers, does not negotiate the contracts, and does not dictate the terms of the contracts.  *Id*. at
¶ 16.

Specific jurisdiction over Honeywell accordingly can be founded only on its own contacts
with New Mexico and this litigation.  *See Jemez Agency, Inc.*, 866 F. Supp. at 1343.   Yet,
Honeywell did not employ Plaintiff and did not participate in any decisions concerning his
employment.  Johnson Declaration, ¶¶ 20-22.  Plaintiff did not work at Honeywell's offices, was
not compensated by Honeywell, and was not subject to its employment policies.  *Id.* ¶ 20.
Honeywell is not even a party to the contract under which Sandia manages and operates Sandia
National Laboratories.  *Id.* ¶ 17.

This action therefore does not arise out of any connections Honeywell may have with New
Mexico, and the Court lacks specific jurisdiction over Honeywell.  *Goodyear*, 564 U.S. at 923-24.
Plaintiff consequently cannot satisfy his burden to establish personal jurisdiction over Honeywell;
therefore, his claims against Honeywell must be dismissed under Rule 12(b)(2).

---

[3] While several Honeywell employees sit on Sandia's Board of Managers, they are not Honeywell officers
or board members.  *Id.* ¶ 19.

### IV.    IN THE ALTERNATIVE, THE BULK OF PLAINTIFF'S CLAIMS MUST BE DISMISSED UNDER RULE 12(b)(6)

#### A.    Motion to Dismiss Standard

Rule 12(b)(6) authorizes a court to dismiss a complaint for "failure to state a claim upon which relief can be granted."  To withstand a Rule 12(b)(6) motion, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 697 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the Court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*.  "[A] sheer possibility that the defendant has acted unlawfully" is insufficient and "the tenet that a Court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions."  *Id*.  The factual allegations must "nudge [the] claims across the line from conceivable to plausible."  *Twombly*, 550 U.S. at 570.  "Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility . . . ." *Iqbal*, 556 U.S. at 697 (internal quotation marks and citations omitted).

#### B.    Plaintiff Has Failed to State a Claim Against Honeywell Because Honeywell Did Not Employ Plaintiff and Is Not Liable for Acts of Its Subsidiary

Plaintiff fails to plead any plausible right to relief against Honeywell.   Plaintiff simply alleges that Honeywell may be held liable under a theory of respondeat superior, or because it allegedly acquiesced in or failed to oversee the conduct of Sandia.  *See* Complaint, ¶¶ 141-142. No factual allegations supporting these conclusory statements are included, and the Court should not take them as true for purposes of ruling on this Motion.  *See Papasan v. Allain*, 478 U.S. 265, 286 (1986) (stating the court is "not bound to accept as true a legal conclusion couched as a factual allegation."); *see also Iqbal*, 556 U.S. at 678.

Under settled law, Honeywell may not be held liable under a theory of *respondeat superior* or failure to oversee the employment decisions of its subsidiary.  Rather, "[t]he law allows businesses to incorporate to limit liability and isolate liabilities among separate entities." *Frank v. U.S. West, Inc.*, 3 F.3d 1357, 1362 (10th Cir. 1993).  This "doctrine of limited liability creates a strong presumption that a parent company is not the employer of its subsidiary's employees, and the courts have found otherwise only in extraordinary circumstances." *Id.*

Courts typically look at four factors when considering whether this strong presumption may be overcome such that a parent corporation may be considered the employer of employees of a subsidiary:  (1) interrelations of operations; (2) common management; (3) centralized control of labor relations; and (4) common ownership and financial control.  *See Frank*, 3 F.3d at 1362; *Sandoval v. Boulder Regional Comm. Ctr.*, 388 F.3d 1312, 1322 (10th Cir. 2004).

Plaintiff does not allege that he was employed by Honeywell.  And his Complaint fails to include any allegations relevant to the factors to be considered as part of any effort to overcome the overwhelming presumption that Honeywell is not the employer of Sandia's employees.[4] Plaintiff does not, for example, allege centralized control of labor relations by asserting that Honeywell made day-to-day employment decisions concerning employees of Sandia, or made the decision to terminate his employment.  *See Frank*, 3 F.3d at 1363.  Nor does Plaintiff make any allegations concerning interrelated operations or common management.  *See id.* at 1363-64.  His bald allegation that Honeywell is the "owner controller and manager" of Sandia (in a footnote) will not suffice.  *See* Complaint at 3, n.1.

---

[4] Honeywell does not submit the Declaration of David Johnson in support of its motion to the extent it is founded on Rule 12(b)(6), but observes that Plaintiff would not possibly be able to make allegations sufficient to establish that Honeywell was Plaintiff's employer.

Since each of Plaintiff's claims is founded on the termination of his employment, and Plaintiff has not alleged facts capable of establishing that he was employed by Honeywell, the Complaint fails to state a claim against Honeywell.  *See Riggs v. Am. Heritage Life Ins. Co.*, 60 Fed. App'x 216, 218 (10th Cir. 2003) (unpublished) (affirming dismissal for failure to state a claim under the ADA where the plaintiff did "not claim an employment relationship with [the defendant]"); *Bristol v. Bd. of Cnty. Comm'rs of Clear Creek*, 312 F.3d 1213, 1217 (10th Cir. 2002) (affirming dismissal of ADA claim because plaintiff failed to show that alleged joint employer shared or codetermined matters governing the essential terms and conditions of her employment).

Plaintiff's claims against Honeywell fail for the additional reason that Honeywell likewise did not employ Carol Adkins or  Paul Shoemaker.  The single-employer analysis is equally applicable to the questions of whether Honeywell could be found to employ Adkins and Shoemaker, but again, Plaintiff's Complaint makes no allegations pertinent to that analysis.  The default presumption therefore applies.  Honeywell did not employ Adkins or Shoemaker, and cannot, contrary to Plaintiff's contention, be liable for their actions under a theory of *respondeat superior.  See Pittard v. Four Seasons Motor Hotel*, 1984-NMCA-044, ¶ 16, 688 P.2d 333.

Finally, to the extent Plaintiff's racketeering claim would not require Plaintiff to prove that Honeywell was his employer, Plaintiff's Complaint nonetheless does not contain any specific factual allegations as to conduct on the part of Honeywell, or involvement of anyone other than the Sandia employees identified in the Complaint.  Furthermore, the Complaint fails to include allegations that could allow Honeywell to be held liable for alleged actions of Sandia.  *See Frank*, 3 F.3d at 1362 & n.2 (discussing four tests that have been applied to evaluate whether a parent corporation may be liable for actions of its subsidiary).

Plaintiff's effort to maintain claims against Honeywell in this action accordingly fails, and the Court must dismiss Plaintiff's claims against Honeywell under Rule 12(b)(6).

**C.      Plaintiff Has Failed to State a Claim For Retaliatory Discharge or Breach of Implied Contract Against the Individual Defendants**

Plaintiff's claims against Senior Manager, Paul Shoemaker, and Center Director, Carol Adkins, must be dismissed for similar reasons.  Plaintiff's claims are all based on termination of his employment by his employer—not Carol Adkins or Paul Shoemaker individually.  *See Bourgeous v. Horizon Healthcare Corp.*, 1994-NMSC-038, ¶ 11, 872 P.2d 852 ("If Bourgeous was employed by Horizon, only Horizon could discharge Bourgeous, not Rodriguez and Wolf.") (internal citation omitted).  Any actions taken by Adkins or Shoemaker with respect to Plaintiff's employment were the actions of Sandia.  *See id.* ("A corporation can act only through its officers and employees, and any act or omission of an officer or an employee of a corporation, within the scope or course of his or her employment, is an act or omission of the corporation.").  The fact that Adkins and Shoemaker acted on behalf of Sandia precludes Plaintiff from proceeding with his claims against them for retaliatory discharge and breach of implied employment contract.

**<u>Retaliatory Discharge</u>**

New Mexico law permits a retaliatory-discharge claim to be made against an individual supervisor in only very limited circumstances.  To prevail on his claims against Adkins and Shoemaker for retaliatory discharge in violation of public policy (Count I), Plaintiff would have to establish that his "firing was an intentional act done solely" to serve the interests of Adkins and Shoemaker taken "outside the scope of employment" of Adkins and Shoemaker.  *See id.* ¶ 12; *see also, e.g., Saavedra v. Lowe's Home Ctrs.*, 748 F.Supp. 1243, 1290 (D.N.M. 2010); *Coyne v. Los Alamos National Security*, 2015 U.S. Dist. Lexis 201206, * 6 (D.N.M. 2015) (unpublished)

19

(dismissing retaliatory-discharge claims against individual defendants when Plaintiff failed to allege that they "acted solely in their own interest, outside the scope of their employment.").

Plaintiff's Complaint does not allege that Adkins or Shoemaker was acting outside of the scope of employment.  Nor is there any allegation that Adkins or Shoemaker acted solely to serve their own individual interests.  Plaintiff's detailed Complaint in fact makes very few specific allegations against Adkins.  Plaintiff includes background allegations concerning Adkins, alleges that he attended a "get-to-know-management" meeting with her, and asserts that Adkins was involved in the decisions to terminate him and prevent him from becoming a full-time employee. *See* Complaint, ¶¶ 4-76, 93, 125-126.  Although Plaintiff does make conclusory references to misconduct and malfeasance of Adkins, and includes her in his broad allegations of retaliation by all defendants, the Complaint is entirely lacking in any factual basis for those allegations.  *See id.* ¶¶ 128-130, 142-143, 151-152.  Count I thus fails to state a plausible claim for relief as it pertains to Carol Adkins.  *See Iqbal*, 556 U.S. at 697.

Plaintiff's Complaint makes the same basic allegations against Shoemaker.  *See id.* ¶¶ 5-6, 8, 37, 125-126, 142-143.  Plaintiff  includes a few additional allegations concerning Shoemaker's handling of Plaintiff's reports of potential scientific problems.  In particular, Plaintiff alleges that Shoemaker stated that a Sandia employee about whose work Plaintiff had complained would continue to provide important support for Sandia's WIPP work, and discouraged criticism of his work.  *See id.* ¶¶ 71, 114.  Plaintiff alleges that Shoemaker discouraged peer review of materials produced by Sandia's remote Carlsbad site, was concerned with outside sources questioning Sandia scientists, and instituted a policy to limit contact between Sandia employees and employees of government representatives.  *Id.* ¶¶ 76, 85, 88-89.  Plaintiff further contends that he and perhaps others reported concerns regarding science to Shoemaker.  *Id.* ¶¶ 87, 90, 99-100, 112, 115.

With respect to retaliation, Plaintiff asserts that Shoemaker prevented him from becoming a long-term employee in retaliation for concerns he raised regarding problematic science.  *Id.* ¶¶ 91-92.  Plaintiff also includes one allegation concerning a false statement Shoemaker purportedly made.  *Id.* ¶ 107.  These allegations fall far short of what would be required to plausibly assert that Shoemaker acted outside the scope of his employment, and solely with intent to further his own interests.  Moreover, the Complaint provides no basis upon which the Court could infer that any actions or omissions taken by Shoemaker with respect to Plaintiff's employment or in relation to concerns he may have raised regarding unreliable science were taken outside the scope of his employment or in furtherance of his personal interests.  *Ovecka v. Burlington N. Santa Fe Ry. Co.*, 2008-NMCA-140, ¶ 15, 194 P.3d 728 (an act is within the scope of employment if it is "fairly and naturally incidental to the employer's business assigned to the employee, done while the employee was engaged in the employer's business with the view of furthering the employer's interest, and did not arise entirely from some external, independent, and personal motive on the part of the employee." (quoting N.M.U.J.I. 13-407) (alterations omitted).  Count I accordingly also lacks facial plausibility as it pertains to Paul Shoemaker.  *See Iqbal*, 556 U.S. at 697.

### Implied Contract

Count II asserts a claim for "Retaliatory Termination for Violation of Implied Contract." To the extent Count II asserts another tort-based retaliation claim, it fails (at a minimum) for the reasons discussed above.  Insofar as Count II asserts a claim for breach of implied contract, it fails for the additional reason that neither Carol Adkins nor Paul Shoemaker would be parties to that alleged contract.  *See Kreischer v. Armijo*, 1994-NMCA-118, ¶ 14, 884 P.2d 827 ("[A]n agent for a disclosed principal is not a party to any contract entered into on behalf of the principal"); *Two Old Hippies, LLC v. Catch the Bus, LLC*, 784 F.Supp.2d 1200, 1217 (D.N.M. 2011) ("Officers are

generally not liable for contract violations of a corporation."); *Lithgow v. New Mexico*, 2005 U.S. Dist. Lexis 61847, *33-*34 (D.N.M. 2005) (unpublished) ("Plaintiff's contract claims do not rest on any admissible evidence that the individual Defendants acted outside the scope of their employment, or that they entered into any contract with Plaintiff that is separate and apart from her employment contract with the institutional Defendants, WCA and the State of New Mexico. Thus, there is no basis for asserting contract claims against the individual Defendants.").

Plaintiff does not allege in his Complaint that Adkins or Shoemaker are parties to the purported implied contract, much less include any factual detail that might support any such allegation. Plaintiff has accordingly failed to state a viable claim against Adkins and Shoemaker for breach of implied contract.

### D. Plaintiff Has Failed to State a Racketeering Claim

Finally, in Count III of the Complaint, Plaintiff attempts to assert a claim under New Mexico's Racketeering Act, NMSA 1978, §§ 30-42-1, *et seq.* The Act is primarily a criminal statute designed "to eliminate the infiltration and illegal acquisition of legitimate economic enterprise by racketeering practices and the use of legal and illegal enterprises to further criminal activities." NMSA 1978, § 30-42-2 (1980). The Act also includes a civil remedies provision in NMSA 1978, § 30-42-6 (1980), which states that "[a] person who sustains injury to his person, business or property by a pattern of racketeering activity may file an action in the district court for the recovery of three times the actual damages proved and the costs of the suit, including reasonable attorney's fees." Thus, to prevail, Plaintiff would have to establish that he suffered a personal injury as a result of a pattern of racketeering activity.

"Racketeering" is defined in the statute to include various criminal offenses. NMSA 1978, § 30-42-3(A) (2009). "Pattern of racketeering activity" is defined to mean "engaging in at least

two incidents of racketeering with the intent of accomplishing any of the prohibited activities set forth in Subsections A through D of Section 30-42-4 NMSA 1978."  NMSA 1978, § 30-42-3(D). And subsections A through D of Section 30-42-4 prohibit use of proceeds from a pattern of racketeering activity, engaging in a pattern of racketeering activity to acquire or maintain an interest in an enterprise, conducting an enterprise's affairs by engaging in a pattern of racketeering activity, and conspiring to engage in any such activities.  *See* NMSA 1978 § 30-42-4.

Plaintiff bases his claim on criminal fraud as provided in NMSA 1978, § 30-16-6 (2006), which "consists of the intentional misappropriation or taking of anything of value that belongs to another by means of fraudulent conduct, practices or representations."  *See* Complaint, ¶ 170.  He alleges that the Defendants engaged in a pattern of racketeering activity, conspired to violate the Act, and engaged in a pattern of racketeering activity to maintain an interest in or control of Sandia National Laboratories.  *See id.* ¶¶ 171-175.  Plaintiff contends that his termination "served to further the pattern of racketeering which Plaintiff threatened to expose."  *Id.* ¶ 176.

Although Plaintiff has made an effort to include allegations as to the required elements, such a formulaic recitation of the elements does not suffice to state a plausible claim.  *See Twombly*, 550 U.S. at 555.  Plaintiff's basic conclusory allegation is that "Defendants, collectively and individually . . . made false misrepresentations and omissions concerning invalid and unreliable scientific study and reliance upon fraudulent data on numerous occasions beginning in or before 2017 and continuing into 2019 and beyond to induce the United States Government to provide money for their services in connection with the Contract."  *Id.* ¶ 163.

Yet, Plaintiff's racketeering claim is founded on an allegation of fraud, and fraud must be pleaded with particularity.  *See* Fed. R. Civ. P. 9(b).  "At a minimum, Rule 9(b) requires that a plaintiff set forth the 'who, what, when, where and how' of the alleged fraud" and to "set forth the

time, place, and contents of the false representation, the identity of the party making the false statements and the consequences thereof." *U.S. ex rel. Sikkenga v. Regence Bluecross Blueshield*, 472 F.3d 702, 726-727 (10th Cir. 2006).

Plaintiff's Complaint does not include a single factual allegation of a misrepresentation made to secure any payment. *See State v. Mercer*, 2005-NMCA-023, ¶ 16, 106 P.3d 1283 (to convict Defendant of fraud, State had to prove: "(1) Defendant, by any words or conduct, made a promise she had no intention of keeping or misrepresented a fact to the victims, intending to deceive or cheat them and, (2) because of the promise or misrepresentation and the victims' reliance on it, Defendant obtained money belonging to someone other than Defendant."). Plaintiff liberally uses the term "fraud" in reference to science he contends is flawed, and alleges that he discovered "fraudulent work" of one Sandia employee had been reported to the DOE and the New Mexico Environment Department. *See* Complaint, ¶¶ 44, 46. But there is no factual allegation that any of the Defendants submitted this work in connection with seeking or obtaining any payment. Plaintiff apparently contends that it is sufficient that Sandia continued to receive regular payments under its contract with the DOE. *See id.* ¶¶ 167-169. Yet, there is no basis to infer any connection between those regular payments and the alleged fraud or purported pattern of racketeering activity.

Plaintiff's Complaint in fact contains only a single specific allegation of a false representation. In Paragraph 107, Plaintiff alleges that "Shoemaker falsely informed the DOE representatives that the tainted data had been removed from their database and SNL was actively working on other remedies." Even assuming the truth of this allegation, there is no basis upon which to conclude that Shoemaker intentionally made this alleged misrepresentation to obtain something of value from the DOE, or that he successfully obtained something of value from the

DOE through the alleged misrepresentation.  There are certainly no grounds to infer that the alleged

misrepresentation was made as part of a pattern of criminal racketeering activity.  And, regardless,

Plaintiff's single allegation of a false statement is as a matter of law incapable of establishing a

pattern of racketeering activity.  *See* NMSA 1978, § 30-42-3(D).

Having failed to allege facts capable of supporting all elements of a successful claim,

Plaintiff cannot proceed with Count III.

## V.     CONCLUSION

Plaintiff's claims are founded on state law, but relate to the practices of Sandia, which

operates primarily on a federal enclave.  Because Plaintiff's state-law claims were recognized or

enacted after Kirtland Air Force Base became a federal enclave, they must be dismissed.  In the

alternative, the Court must dismiss Plaintiff's claims against Honeywell because the Court lacks

personal jurisdiction over Honeywell, and Honeywell in any event did not employ Plaintiff and is

not responsible for the acts of Sandia and its employees alleged in the Complaint.  Plaintiff likewise

has failed to state a claim against the Individual Defendants because he has not alleged that the

Individual Defendants acted outside the scope of their employment with Sandia, and they would

not be parties to the alleged implied contract.  Finally, Plaintiff has failed to state a plausible claim

for violation of New Mexico's Racketeering Act.  The Court should therefore dismiss this entire

action under the federal enclave doctrine and dismiss the claims against Honeywell under Rule

12(b)(2).  In the alternative, all claims except Counts I and II against Sandia must be dismissed

under Rule 12(b)(6).

Respectfully submitted,

STELZNER, WINTER, WARBURTON,
 FLORES & DAWES, P.A.
P.O. Box 528
Albuquerque, NM 87103

(505) 938-7770
qsmith@stelznerlaw.com
jd@stelznerlaw.com

By:   /s/ Quentin Smith
      Quentin Smith
      Jaime L. Dawes

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on the 5th day of April, 2022, I filed the foregoing electronically through the CM/ECF system, which caused counsel to be served by electronic means, as more fully reflected on the Notice of Electronic Filing.

  /s/ Quentin Smith