IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

CHARLES S. OAKES,

    Plaintiff,

v.                                                     No. 2:22-cv-00224-SMV-GJF

HONEYWELL INTERNATIONAL, INC.,
a Delaware Corporation; NATIONAL TECHNOLOGY
AND ENGINEERING SOLUTIONS OF
SANDIA, LLC, a Delaware Corporation
and wholly-owned subsidiary of
Honeywell International, Inc.; CAROL
ADKINS; and PAUL SHOEMAKER,

    Defendants.

**PLAINTIFF'S MOTION FOR REMAND OR IN THE ALTERNATIVE FOR JURISDICTIONAL DISCOVERY OR EVIDENTIARY HEARING IN SUPPORT**

Plaintiff Charles Oakes respectfully files his Motion for Remand with the Court. In support, Plaintiff contends that the cases Defendant relies upon in fact support the conclusion that the enclave doctrine applies *where the harm occurs* and *not* where the decision was made.

In one of the primary cases defendants rely upon to remove this lawsuit to this Court, *Kennicott v. Sandia Corp.*[1] these same defendants made the false argument that the location where the plaintiffs worked was determinative on the question of whether the federal enclave doctrine applies, regardless of where the decision adverse to plaintiff's employment was made or administered. In *Kennicott,* Judge Browning held that in fact "the federal enclave doctrine applies to state law employment discrimination claims that employees who work on the federal

---

[1] 314 F.Supp.3d 1142 (D.N.M 2018).

enclave bring, *because the harm happens on the federal enclave . . .* no matter where the employer made the discriminatory decision" (emphasis supplied).

Defendants attempt here to improperly reverse the federal enclave doctrine to fit their needs, but not the holding of the courts. Faced with facts that would defeat their removal of this lawsuit, Defendants take the opposite position, that the tort claim here arose from a federal enclave because the decision to fire Charles Oakes was allegedly made on federal property. Yet, Dr. Oakes did not work on a federal enclave, the supervisor defendant Shoemaker who made the decision to fire Dr. Oakes also did not work on the federal enclave, and the harms proscribed by the New Mexico common law tort of retaliatory discharge arose outside a federal enclave.

On March 28, 2022 defendants filed their Notice of Removal, giving notice of their intent to remove this case on the basis of the federal enclave doctrine.

Defendants allege and attempt to show the requisite facts for this court to assume jurisdiction through declarations from Paul Shoemaker, who was plaintiff's ultimate supervisor and from Carol Adkins, Shoemaker's supervisor, however both declarations are factually defective as a means to support defendants' allegations that the New Mexico common law tort of retaliatory discharge arose on federal property that can be considered a federal enclave.

Therefore, Charles Oakes moves the Court to remand this lawsuit back to state court as defendants have not shown the requisite facts or law showing that their removal was proper and that this Court has jurisdiction over this lawsuit. Alternatively, plaintiff moves the Court to allow jurisdictional discovery and/or an evidentiary hearing on that matter to test the veracity of the factual allegations made in support of defendants' removal.

**Factual background**

Through the Shoemaker and Adkins declarations, Defendants claim this court has jurisdiction over this lawsuit because defendants allege the decision to fire Dr. Oakes occurred on the federal enclave that is Kirtland Air Force Base (KAFB). The following facts show that the removal was improper even on the basis rejected in *Kennicott*.

1. Dr. Oakes was only employed in Carlsbad, at a private property leased from RMI Properties LLC by Sandia at 4100 National Parks Hwy.[2]

2. Defendant Shoemaker also was employed in Carlsbad at the 4100 National Parks Hwy address on an everyday basis as Dr. Oakes' ultimate supervisor.[3]

3. The Sandia facility in Carlsbad, NM is not a federal enclave as it is leased from RMI Properties, LLC by Sandia. The office and laboratory facilities are not owned by the federal government.[4]

4. Shoemaker fired Dr. Oakes in Carlsbad on the privately owned property leased by Sandia; no other Sandia management was present on the property.[5]

5. Shoemaker was the person who decided to fire Dr. Oakes, according to Shoemaker's statements to Dr. Oakes' coworkers. Shoemaker told one coworker "that's the last straw" after a meeting between SNL-Carlsbad and LANL-Carlsbad scientists at a NM State University owned facility during which Dr. Oakes' complaints about the fraudulent science at issue were discussed. Shoemaker decided to fire Dr. Oakes to silence him and to conceal Sandia's fraudulent science.[6] Shoemaker subsequently, told another co-worker

---

[2] Declaration of Charles Oakes, attached as Exhibit A, hereafter "Oakes."
[3] Id.
[4] Oakes; Declaration of Carol Adkins, paragraph 12.
[5] Oakes.
[6] Id.

of Dr. Oakes that "he (Shoemaker) had terminated the employment of Charles Oakes." Both statements were made in the privately owned Carlsbad facility leased by Sandia.

6. Shoemaker was solely responsible for all other aspects of management at the Carlsbad facility in which Dr. Oakes was employed. For example, conversion of an LTE employee to FTE (limited-term to full time employment) was at Shoemaker's discretion without any input from Sandia in Albuquerque.[7]

7. The Shoemaker declaration falls far short of definitively stating that the decision to fire Dr. Oakes was made in Albuquerque on federal property, even assuming that contrary to *Kennicott*, that the location where that decision was made is a factor.

    a. In paragraph 8 of his declaration, the statement is that Shoemaker has worked in both Albuquerque, without stating where, and in Carlsbad, not that he was on federal property at any time when he decided to fire Dr. Oakes.

    b. Paragraphs 15 and 16 allege that the rules, policies and procedures that apply to defendants' employees working on federal property apply to those employees not on federal property in Carlsbad, but does not state that any of those rules, policies or procedures were followed that resulted in Dr. Oakes' termination. Paragraph 16 also states only that such rules, policies and procedures are "generally" adopted and enforced on the federal property, again, not specifying if any such rules were specifically at issue in this case and were in fact enforced leading to Dr. Oakes' termination.

    c. Shoemaker equivocates in paragraph 18 if he decided to fire Dr. Oakes, stating only that he was "involved", and not where he was when he was "involved".

---

[7] Id.

  d. Paragraph 19 similarly fails to specify who was "involved" in the decision to fire Dr. Oakes, where they were when so "involved", other than Carol Adkins, stating that she was on federal property when "involved" in that decision.

  e. Paragraph 20 also fails to state a fact within his personal knowledge about Adkins or others who "participated" in the discussion, again not identifying who it was and where such persons were located, only that he "believed" that Adkins and the unidentified others were on Kirtland Air Force Base. The fair inference from that statement is that Shoemaker was not on federal property when "involved" in the discussion, or he would state where he was if it supported defendants' argument in support of removal.

  f. Carol Adkins' declaration while placing her on the federal property when the termination discussion occurred, does not state that she in fact made that decision, only that she was "involved."[8]

In summary, there is not a single, unequivocal statement about who made the decision that caused the tort that injured Dr. Oakes. The damage was caused in Carlsbad, on privately owned property, by Shoemaker when he fired Dr. Oakes in their mutual workplace.

---

[8] Adkins declaration paragraphs 13 and 14.

**Argument and Authorities**

"[T]here is a presumption against removal jurisdiction."[9] Because federal courts are courts of limited jurisdiction, the removal statutes are narrowly construed, and all doubts concerning federal jurisdiction are resolved against removal.[10]

The burden of proving all jurisdictional facts is on the party asserting federal jurisdiction..[11]

The federal statute providing for the removal of cases from state to federal court was intended to restrict rather than enlarge removal rights.[12] Federal courts, therefore, are to strictly construe the removal statutes and to resolve all doubts against removal.[13] The removing party bears the burden of establishing the requirements for federal jurisdiction..[14]

In *Kennicott*[15] this Court followed these defendants' arguments that the employee's workplace determines where the cause of action arises because that is where the injury occurs,[17] and if the employee works on the federal enclave, his or her claims fail under the enclave doctrine. The Court concluded that "the federal enclave doctrine applies to state employment discrimination claims when the plaintiffs' work and are harmed on the federal enclave, even if the employer makes allegedly discriminatory decisions elsewhere."[16]

---

[9]. *Laughlin v. Kmart Corp.*, 50 F.3d 871, 873 (10th Cir. 1995).
[10] *See Pritchett v. Office Depot, Inc.*, 420 F.3d 1090, 1094-95 (10th Cir. 2005); *Fajen v. Found. Reserve Ins. Co.*, 683 F.2d 331, 333 (10th Cir. 1982).
[11] *McNutt v. General Motors Acceptance Corp.,* 298 U.S. 178, 189, 56 S.Ct. 780, 80 L. Ed. 1135 (1939)
[12] *Greenshields v. Warren Petrol. Corp.*, 248 F.2d 61, 65 (10th Cir. 1957).
[13] *Fajen v. Found. Reserve Ins. Co..,* 683 F.2d, 333.
[14] *Full Life Hospice, LLC* v. Sebelius, 709 F.3d 1012, 1016 (10th Cir. 2013)
[15] *Kennicott,* 314 F.Supp.1142, 1154
[16] *Id.*

Judge Browning came to this conclusion rejecting the logical opposite of the plaintiffs' contention in that case, that because the decisions that plaintiffs argued caused their injury were made off the enclave, the doctrine did not apply. The Court's decision was premised in part by New Mexico state law, concluding that "there is no sound reason to believe that New Mexico would place an employment discrimination action where the discriminatory decision was made."[17]

This lawsuit alleges that Dr. Oakes' termination violated the New Mexico common law tort of retaliatory discharge. *Kennicott's* holding follows the New Mexico law of torts, the traditional *lex loci delicti commissi* doctrine, that the substantive rights of the parties are governed by the law of the place where the wrong occurred.[18] Supporting the decision is the New Mexico law following the Restatement (First) Conflicts of Law § 377 & cmt. A (1934), that the state [location] where the wrong occurred is "the state where the last event necessary to make an actor liable for an alleged tort takes place."[19] In this case, the last event was Shoemaker making the decision to fire Dr. Oakes after "the last straw" discussion in the privately owned office building leased by Sandia in Carlsbad on January 25, 2019, or at the least, when Shoemaker fired Dr. Oakes in the leased Carlsbad property just six days later on January 31, 2019.

In this lawsuit Dr. Oakes alleges that all of the conduct leading to his termination occurred off the federal enclave. Dr. Oakes' complaints and disclosures about the defective, if not fraudulent, science being used by the defendants to represent the continued safety of the

---

[17] *Id.* at 1170.
[18] *Id.* at 1171 citations omitted.
[19] *Kennicott*, 314 F.Supp.1142, 1171, citing in support *Flemma v. Halliburton Energy Servs.*, 2013-NMCA-022, 303 P.3d 814, 819; *United Wholesale Liquor Co. V. Brown-Forman Distillers Corp.*, 1989-NMSC—030 ¶ 9.

radioactive waste stored at the WIPP nuclear waste site were made away from the federal enclave and were the reason for his retaliatory discharge. Shoemaker's termination of Dr. Oakes was his attempt to silence those complaints and disclosures. Shoemaker stated to Dr. Oakes' coworker that "**he** had terminated Dr. Oakes' employment" (emphasis supplied). Shoemaker was alone, other than a Carlsbad City police officer and Sandia security guard, when he fired Dr. Oakes in Carlsbad in Shoemaker's office in the privately owned building leased by Sandia. All of these circumstances arose solely by virtue of Dr. Oakes' employment *off* the federal enclave, making the doctrine upon which defendants' removal was based inapplicable and depriving this Court of jurisdiction over this lawsuit. Defendants' conclusory statements, those lacking any showing of personal knowledge on their face, or plainly disputed allegations do not carry the defendants' burden of proof to support removal and are legally inapplicable to establish any jurisdictional argument that they may defend this case in this Court.

  The federal enclave doctrine flows from the sovereignty issue that Congress has sole authority over federal property. The logical inverse of this statement of law is that Congress does not have sovereign authority over, and the doctrine does not apply to, torts committed off federal property. Any opposite conclusion would necessarily infringe on New Mexico state sovereignty protected by the Tenth Amendment to the United States Constitution. Dr. Oakes suffered the harm sought to be remedied under the New Mexico common law tort of retaliatory discharge in Carlsbad, at the privately owned facility where he worked, where the fraudulent work was performed and discovered, and where he was fired. Even if, as in *Kennicott*, the Court were to decide that the place defendants allegedly decided to fire him was on federal property, the declarations set forth here are insufficient to establish that allegation, and the actual action and harms occurred off of federal property.

Alternatively, should the Court determine that the present record is insufficient to carry either parties' arguments on this question, Dr. Oakes moves the Court for discovery on the jurisdictional facts at issue here, or for a full evidentiary hearing after such discovery may be completed, in light of the disputed facts set forth here.

For the reasons stated, Plaintiff moves the court to grant his motion to remand, or for discovery on the jurisdictional facts at issue, and for such other relief to which the Court finds him entitled.

        Respectfully submitted,

        VALDEZ AND WHITE LAW FIRM, LLC
        /s/Timothy L. White
        Timothy L. White
        124 Wellesley Drive, SE
        Albuquerque, N.M. 87125
        Telephone: (505) 345-0289
        Email: tim@valdezwhite.com

        *And*

        DAVIS LAW NEW MEXICO
        Nicholas T. Davis
        1000 Lomas Blvd. NW
        Albuquerque, NM 87102
        (505) 242-1904
        nick@davislawnm.com

        *Attorneys for Plaintiff Charles Oakes*

CERTIFICATE OF SERVICE

This is to certify that this pleading was emailed on June 20, 2022 to the following counsel of record:

Quentin Smith
P.O. Box 528
Albuquerque, N.M. 87103
Ph: 505-938-7770
qsmith@stelznerlaw.com

<u>/s/ Timothy L. White</u>
Timothy L. White

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

CHARLES S. OAKES,

    Plaintiff,

v.                                                   No. 2:22-cv-00224-SMV-GJF

HONEYWELL INTERNATIONAL, INC.,
a Delaware Corporation; NATIONAL TECHNOLOGY
AND ENGINEERING SOLUTIONS OF
SANDIA, LLC, a Delaware Corporation
and wholly-owned subsidiary of
Honeywell International, Inc.; CAROL
ADKINS; and PAUL SHOEMAKER,

    Defendants.

## DECLARATION OF CHARLES OAKES

    Pursuant to 28 U.S.C. § 1746, Charles S. Oakes declares:

1. I am the plaintiff in this lawsuit, and am both competent and of age to make this declaration.
2. Each of the factual averments in support of Plaintiff's Motion for Remand are true and correct and I declare under penalty of perjury that they are true and correct.

                                                               *Charles S. Oakes*
                                                               Charles S. Oakes

Date: June 20, 2022.

# EXHIBIT A