IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

CHARLES S. OAKES,

    Plaintiff,

v.                                                                                       No. 2:22-cv-00224-SMV-GJF

HONEYWELL INTERNATIONAL, INC.,
a Delaware Corporation; NATIONAL TECHNOLOGY
AND ENGINEERING SOLUTIONS OF
SANDIA, LLC, a Delaware Corporation
and wholly-owned subsidiary of
Honeywell International, Inc.; CAROL
ADKINS; and PAUL SHOEMAKER,

    Defendants.

**PLAINTIFF'S REPLY IN SUPPORT OF HIS MOTION FOR REMAND
OR IN THE ALTERNATIVE FOR JURISDICTIONAL DISCOVERY OR
EVIDENTIARY HEARING IN SUPPORT**

Charles Oakes replies here in support of his Motion for Remand to show the Court that the motion should be granted if solely on the basis of the law holding "'the plaintiff's place of employment' – rather than where employment decisions were made – "'[is] the significant factor in determining whether the plaintiff's employment claims arose under the federal enclave doctrine'".[1] "An employer cannot manufacture federal jurisdiction simply by calling on executives to make decisions on a federal enclave, even if the facts giving rise to the claim occurred outside of the enclave."[2] The defendants bear the burden of establishing that the material events alleged in

---

[1] *Coleman v. Trans Bay Cable, LLC*, *Coleman v. Trans Bay Cable, LLC*, *5, citing *Abikar v. Bristol Bay Native Corp.,* 300 F.Supp 3d 1092, 1102 (S.D. Cal. 2018)(quoting *Lockhart v. MVM, Inc,,* 175 Cal. App.4th 1452 (2009).
[2] *Id*.

the complaint and giving rise to plaintiff's claims occurred on the federal enclave[3], something these defendants cannot and have not shown the Court.

The present lawsuit is factually and legal indistinguishable from the decision in *Coleman v. Trans Bay Cable, LLC*, granting that plaintiff's motion to remand.[4] There the trial court had to answer the same question as this Court, viewed in the light of the law requiring that the removal statute be strictly construed against finding jurisdiction and requiring proof from the defendant seeking removal that the material facts pleaded in plaintiff's complaint show that they occurred on federal property, where the claim must have arisen to establish jurisdiction.

In *Coleman*, the defendant claimed that all pertinent management decisions were made on the enclave including the decision to fire Plaintiffs. Plaintiffs worked primarily in a location several miles away from the federal enclave property and reported to management in that "remote site." Plaintiffs had disclosed the defendant's non-compliance with state utility regulations to their management and others off the enclave. Plaintiffs' manager made comments or took action that was retaliatory, in the off-enclave building. Plaintiffs' manager fired Plaintiffs in that off-enclave site. The defendant alleged in support of their removal that, as here, the pertinent management decision was made on the enclave.[5]

The *Coleman* Court disagreed with the defendant noting in part that that strictly construing the removal statute as required led to the conclusion that the defendants' arguments were legally and factually deficient. The court held that even if the employment decision was made on the federal property, that the location of the primary work, the retaliatory conduct and the harm occurred off enclave and "[a]ny connection between [the higher-level supervisor]'s conduct [on

---

[3] *Coleman*, *4-5.
[4] Id.
[5] Id. at *2-3.

the enclave] and [the direct supervisors]'s behavior towards plaintiffs is insufficient to confer federal jurisdiction.⁶" The Court explicitly stated that in deciding whether the enclave doctrine applied, it "must consider where the material events giving rise to plaintiffs' claims as pleaded occurred."⁷

*Coleman* sets out the proper test here on nearly identical facts. Dr. Oakes worked only in Carlsbad, not on the Sandia campus on Kirkland Air Force Base. Dr. Oakes' direct supervisor, defendant Shoemaker, worked in Carlsbad with regard to any of his supervisory duties of Dr. Oakes. Dr. Oates reported the fraud in his Carlsbad workplace. Shoemaker's retaliatory pushback occurred in Carlsbad. Shoemaker fired Dr. Oakes in Carlsbad, where the tort was actually committed when the retaliation became termination. Regardless of whether the decision to fire Dr. Oakes was sketched out on a napkin at the Frontier, or on Kirtland Air Force Base, it did not come to fruition, there was no act establishing liability on defendants for causing Dr. Oakes damages, until Shoemaker said "you're fired". In Carlsbad, which defendants admit is not a federal enclave.

The authorities cited by defendants' response are simply inapposite as in each case the plaintiffs worked at least part of the time on the federal property, so that was the locus of the claim, where it arose. While defendant cites to the *Smelser* decision for the proposition that the location of human resources is determinative, they fail to note that the court's focus was on "the locus in which the claim arose, i.e., where the substance and consummation of the claim occurred, and where all pertinent events occurred.⁸" As the *Coleman* court laid out, where the "material events that give rise the plaintiff['s] claim *as pleaded occurred*" are the factors determining whether or

---

⁶ Coleman at *3.
⁷ *Id*. at *4.
⁸ *Smelser v. Sandia Corp*., No. CV 17-388 SCY/KK, 2018 WL 1627214, at *8 (D.N.M. Mar. 30, 2018) (the plaintiff worked on base, events giving rise to claim occurred on base, and discrimination concerning her work on base were determinative).

not the federal enclave doctrine applies. In the case at hand, Plaintiff not only worked completely off the enclave, but also his supervisors, the group managers *and their supervisor*, Senior Manager Shoemaker, *all did as well*. Plaintiff and his management team worked entirely, or nearly entirely, off-enclave and the doctrine should not be found to apply.

Defendants also attack the *lex loci delecti* doctrine brought up in Plaintiff's Motion. Despite that the doctrine is oft used in conflict of laws, it is applicable here, as the *Coleman* court makes abundantly clear. And that is the logical linchpin of the analysis.

> The fact that business is transacted within a federal enclave, or that services are rendered or materials are furnished within a federal enclave, does not immunize the persons engaged therein from liability for breach of any duty arising from such activity. This being true, the acquisition of the personal jurisdiction necessary to give a court the power to deal with such a breach should not be defeated by the fact that the breach occurs within a federal enclave[9].

The location matters, but not in the way that Defendants argue it does. Defendants seek to apply the federal enclave in a way that is inconsistent with a majority of the federal enclave cases. For example, "an employment discrimination claim does not arise on a federal enclave where the relevant manager or supervisor made, off of the federal enclave, the decision which led to the unlawful adverse employment action."[10]

Defendants make the strained argument that because Dr. Oakes was a "Sandia employee… subject to the policies and procedures applicable to all Sandia employees," that, therefore, the "majority of the work" was on the enclave, because that is where Sandia is.[11]  First, this simply is not so, and second, these were *not the facts that Plaintiff plead*. Once again, as *Coleman* instructs, Sandia cannot "manufacture jurisdiction" over a claim merely by forcing the "decision" onto the

---

[9] *Swanson Painting v. Painters Local Un. No. 260*, 391 F.2d 523, 525 (9th Cir. 1968).
[10] *Lawler v. Miratek Corp.,* No. EP-09-CV-252-KC, 2010 WL 743925, at *4 (W.D. Tex. Mar. 2, 2010)
[11] Response, at 7

enclave. Plaintiff was clear in his complaint, he was terminated *in Carlsbad*.[12] The facts that Plaintiff plead about his work situation continually refer to the comings and goings of supervisors and other employees to and from the Carlsbad worksite, which is not federal property. The misconduct, willful ignorance and down-right coverup of fraudulent information occurred in Carlsbad.[13] And Plaintiff detailed the relevant facts in his remand motion that he and his direct supervisor did the majority of their work in Carlsbad.[14] But for the Carlsbad supervisor Shoemaker, located on a day-to-day basis at the Carlsbad facility, Plaintiff would not have been terminated.

An analogous context that is often the subject of the federal enclave doctrine is the National Labor Relations Act and whether workers may unionize on enclaves. Section 14(b) of the Act provides:

> [Agreements requiring union membership in violation of State law] Nothing in this Act [subchapter] shall be construed as authorizing the execution or application of agreements requiring membership in a labor organization as a condition of employment in any State or Territory in which such execution or application is prohibited by State or Territorial law.

In *Oil Workers v Mobil Oil*,[15] the United States Supreme Court looked at Sec. 14(b) and weighed the importance of where workers actually worked, directly rejecting the argument that where an employee was hired is determinative when it held: "predominant job situs is the controlling factor in determining the applicability of § 14(b)."[16] Location of the work done, not who the employee works for, is the key in order "minimize the possibility of patently anomalous extraterritorial

---

[12] Complaint, ¶¶ 118-119.
[13] Complaint, ¶¶ 34-117.
[14] Motion for Remand at 3-5.
[15] 426 U.S. 407 (1976).
[16] Id at 420 (1976).

applications of any given State's right-to-work laws."[17] This comports with the holdings in *Coleman*, and *Swanson*, *supra*.

Defendants in their Response seek to expand the enclave doctrine beyond its parameters and apply a place of hiring, or a place of management, or termination decision, rather than what the case law supports, the predominant job situs or occurrences analysis. Where the employee worked, where the employee consistently had meetings with his manager in which he was rebuffed on a permanent hire position, where that management rebuffed his concerns over fraudulent conduct with serious and even lethal consequences, and where that management terminated him, should control where the lawsuit is brought – state court. The cases that Defendants cite are all distinguishable either on their facts or the law for which they are being argued. Plaintiff respectfully requests this Court apply the correct analysis of the enclave doctrine, contrary to Defendants' argument, and the facts as plead, and find that this matter is properly remanded back to state court.

For the reasons and on the stated authorities Dr. Oakes requests that the motion to remand be granted and for such other relief as the Court finds appropriate.

Respectfully submitted,
Valdez & White Law Firm, LLC

/s/ Timothy White
Timothy L. White
Valdez & White Law Firm, LLC
124 Wellesley Dr SE
Albuquerque, NM 87106
(505) 345-0289
tim@valdezwhite.com

*and*

---

[17] *Id*, at 218 (internal punctuation and citation omitted).

Davis Law New Mexico

Nicholas T. Davis
1000 Lomas Blvd. NW
Albuquerque, NM 87102
(505) 242-1904
nick@davislawnm.com

*Attorneys for Plaintiff Charles Oakes*

## CERTIFICATE OF SERVICE

I hereby certify that on July 19, 2022, I filed the foregoing electronically through the CM/ECF system, which caused all counsel of record to be served by electronic means, as more fully reflected on the Notice of Electronic Filing.

<u>/s/ Timothy L. White</u>
Timothy L. White