IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

**CHARLES S. OAKES,**

    **Plaintiff,**

**v.**                                                                        **No. 22-cv-0224 SMV/GJF**

**HONEYWELL INTERNATIONAL, INC.;**
**NATIONAL TECHNOLOGY AND**
**ENGINEERING SOLUTIONS OF SANDIA, LLC;**
**CAROL ADKINS; and PAUL SHOEMAKER;**

    **Defendants.**

**MEMORANDUM OPINION AND ORDER**
**GRANTING PLAINTIFF'S MOTION TO REMAND AND**
**DENYING DEFENDANTS' MOTION TO DISMISS**

THIS MATTER is before the Court on Plaintiff's Motion for Remand or in the Alternative for Jurisdictional Discovery [Doc. 22] filed June 20, 2022. Defendants responded in opposition on July 5, 2022. [Doc. 20]. Plaintiff replied on July 19, 2022. [Doc. 21]. The parties consented to my presiding over this case and entering final judgment. Ruling was stayed briefly pending a decision from the Tenth Circuit in similar case called *Bisconte v. Sandia National Laboratories*. No. 21-2133. Each side file a supplement after *Bisconte* was decided. [Docs. 25, 26]. Oral argument is not needed. Having considered the Motion, the record, and the relevant law, the Court finds that Defendants do no allege that "all pertinent events" occurred on Kirtland Air Force Base. They fail to show federal enclave jurisdiction. The Motion to Remand [Doc. 22] should be granted, and Defendants' Motion to Dismiss (based on the federal enclave doctrine) [Doc. 4] should be denied.

**Background**

Plaintiff worked as a scientist for Defendant National Technology and Engineering Solutions of Sandia ("NTESS"). NTESS contracts with the government[1] to operate Sandia National Laboratories. Much of NTESS's operations are carried out at Kirtland Air Force Base ("KAFB"), a federal enclave. However, some of its operations are not on KAFB. For example, Plaintiff worked at an off-base facility, which housed the "Sandia National Laboratories Carlsbad Programs Group" ("SNLC"), in Carlsbad, New Mexico. Plaintiff, Defendant Shoemaker, and others were assigned to the Carlsbad office to be closer to the Waste Isolation Pilot Plant ("WIPP"), which they oversaw. [Doc. 1-2] at 2–3.

Plaintiff alleges that Defendants (and others) produced and covered up "scientific errors and research misconduct" related to the WIPP, which occurred outside the enclave. *Id.* at 12. Plaintiff alleges that when he attempted to bring these problems to light and to remedy them, Defendants retaliated by, among other things, firing him. *E.g., id.* at 23. Plaintiff specifically alleges that Defendant Shoemaker decided to retaliate against him outside of the enclave and, in fact, did retaliate against him outside of the enclave.

Plaintiff filed his Complaint on January 24, 2022, in the Second Judicial District for the State of New Mexico, alleging "retaliatory discharge in violation of public policy (whistleblower)," "retaliatory termination for violation of implied contract," and racketeering. *Id.* Defendants removed the case to federal court on the basis of federal enclave jurisdiction. [Doc. 1].

---

[1] NTESS contracts with the National Nuclear Security Administration, a semi-autonomous agency within the United States Department of Energy. [Doc. 1-2] at 2.

2

Defendants bear the burden of establishing that removal is proper.  *See McPhail v. Deere & Co.*, 529 F.3d 947, 953 (10th Cir. 2008).

### Federal-Enclave Jurisdiction

Federal enclave jurisdiction is about a physical place, a geographic location.  *See, e.g. Allison v. Boeing Laser Tech. Servs.*, 689 F.3d 1234, 1236–37.  The Constitution empowers Congress to exclusively regulate *land* acquired from state governments, referred to as "enclaves." *See id.*; *Akin v. Ashland Chem. Co.*, 156 F.3d 1030, 1034 (10th Cir. 1998) ("The United States has power and exclusive authority in all [c]ases whatsoever over all *places* purchased by the government [for the erection of] needful buildings.") (emphasis added) (internal quotation marks and ellipsis omitted).  Federal enclaves thus include federal buildings, national forests and parks, and, as pertinent here, military bases.  *Allison*, 689 F.3d at 1235.  "State-law 'actions [that] arise from incidents *occurring in federal enclaves* may be removed to federal district court as a part of federal question jurisdiction.'"  *Bd. of Cnty. Comm'rs of Boulder Cnty. v. Suncor Energy (U.S.A.) Inc.*, 25 F.4th 1238, 1271 (10th Cir. 2022) (emphasis added) (quoting *Akin v. Ashland Chem. Co.*, 156 F.3d 1030, 1034 (10th Cir. 1998))), *petition for cert. filed* (U.S. June 8, 2022) (No. 21-1550).

In *Suncor*, the Tenth Circuit recently considered the standard for determining whether a claim arises in a federal enclave.  There, the plaintiffs asserted state-law claims against several fossil-fuel companies for their role in causing climate change.  *Id.* at 1248.  The defendant companies argued that these claims qualified for federal jurisdiction because the plaintiffs alleged that the companies' worldwide fossil-fuel business caused environmental damage over a large geographic area, including property within a federal enclave.  *Id.* at 1271.  The circuit court rejected this "all-encompassing theory," because federal-enclave jurisdiction generally requires that

3

"*all* pertinent events" take place on a federal enclave. *Id.* at 1271–72 (emphasis in original) (quoting *Rosseter v. Indus. Light & Magic*, No. C 08-04545, 2009 U.S. Dist. LEXIS 5307, 2009 WL 210452, at *1 (N.D. Cal. Jan. 27, 2009)).

Soon after deciding *Suncor*, the Tenth Circuit clarified the meaning of "all pertinent events." *Bisconte v. Sandia Nat'l Laboratories*, U.S. 2022 App. LEXIS 24537, at *9 (Aug. 31, 2022) (unpublished). Sandia National Laboratories ("Sandia"), the plaintiff's employer, was "predominately" located on KAFB, but the plaintiff herself did not work on the base. Instead, she worked either from home (telecommuting) or at a location maintained by Sandia off base. *Id.* at 2. The plaintiff and Sandia disputed whether the "pertinent" events occurred on KAFB. *Id.*

The circuit court explained that the "pertinent" events were the "alleged acts of misconduct that gave rise to [the p]laintiff's claims." *Id.* at *10. The misconduct alleged was Sandia's "failure to pay and promote women on par with men, retaliation for reporting misconduct, discrimination and termination based on gender and disability, and breach of internal policies designed to protect employees from discrimination and retaliation." *Id.* at *9. Specifically, the pertinent events were "actions taken, decisions made, and policies developed by Sandia's managers and executives." *Id.* at *10. Because those managers and executives took action, made decisions, and developed policies *on KAFB*, the court found that all pertinent events occurred on a federal enclave, and thus federal enclave jurisdiction was present. *Id.* at *10.

The court then went onto identify some facts *not* pertinent to the plaintiff's claims. *Id.* For example, the location of computer servers and the location where the plaintiff surrendered her security clearance were "minor facts," "tangential" to the plaintiff's claims. These facts were "not pertinent because they [did] not relate to conduct that gave rise to [the plaintiff's] employment-

4

law claims." *Id.* (citing *Allison*, 689 F.3d at 1235). Finally, the court was explicit that it did not matter where the plaintiff "experienced her injury." *Id.* Rather, the pertinent events were the "conduct from which those injuries allegedly stemmed—conduct that occurred on the base." *Id.*

### Discussion

Having removed the case from state court, [Doc. 1], Defendants bear the burden of establishing federal enclave jurisdiction, *see McPhail*, 529 F.3d at 953. Defendants compare this case to *Bisconte*, pointing out that in that case, federal enclave jurisdiction existed even though the plaintiff worked off base. [Doc. 25] at 1. Defendants further argue that, like in *Bisconte*, "the alleged misconduct that gives rise to Plaintiff's claims is retaliation for reporting suspected misconduct, termination, and breach of internal policies." *Id.* at 2.

> Defendants argue that this action arises from [NTESS]'s practices on KAFB and, in support, have shown that "Plaintiff was subject to the policies and procedures applicable to all [NTESS] employees," that "[t]hose policies and procedures are adopted and enforced on the federal enclave," and that "[w]ith the exception of Shoemaker, the individuals who participated in the discussions concerning termination of Plaintiff's employment were all located on [KAFB]."

*Id.* (quoting Defendants' Response [Doc. 20] at 7–10).

The heart of Defendant's position is that any claim related to NTESS or employment with NTESS should be subject to federal enclave jurisdiction. [Doc. 20] at 2, 4, 5, 7. Defendants urge that federal enclave jurisdiction "should apply to *entities* like [NTESS] that predominately operate on federal enclaves." *Id.* at 10 (emphasis added). Undisputedly, most of NTESS's offices are located at KAFB. Because Plaintiff's claims are connected to his employment with NTESS, Defendants reason that federal enclave jurisdiction is present. *Id.* Even though Plaintiff was assigned to work outside the enclave, in Carlsbad, and even though Plaintiff alleges that adverse employment decisions were made off base, Defendants maintain that federal enclave jurisdiction

5

is present because NTESS "primarily operates on the enclave" and because Plaintiff's claims "implicate employment practices on the enclave." *Id.* at 7.

Additionally, Defendants argue that because NTESS is a business entity, it "must be found to act and make decisions . . . from its headquarters," which is at KAFB. *Id.* at 2; *see id.* at 7. Therefore, Defendants argue, Plaintiff's termination should be seen as having occurred on KAFB.

Lastly, count III of the Complaint alleges that Defendants misrepresented compliance with their government contract and, thus, improperly obtained money from the government. *See id.* at 9–10. Defendants argue that count III "implicates" its operations on base and "important federal procurement interests." *Id.* at 10. Relatedly, Defendants argue that the "substantial federal interests" contemplated by the Enclave Clause of the Constitution are present in this case, regardless of any events that may have occurred off the enclave. *Id.* at 10–11.

Defendants' arguments are not persuasive. Defendants do not allege, much less establish, that all pertinent events occurred on KAFB. Plaintiff alleges that Defendant Shoemaker made the decision to terminate his employment (in retaliation for Plaintiff's whistleblowing) in Carlsbad, and that Shoemaker terminated his employment in Carlsbad. [Doc. 17] at 2, 3. Defendants do not dispute the locations of Shoemaker's alleged misconduct. Instead, they argue that Shoemaker's actions should be imputed to KAFB. *See* [Doc. 20] at 2, 4, 5, 7.

There are other examples of alleged misconduct giving rise to Plaintiff's claims occurring outside the enclave, but it is not necessary to discuss them in any detail.[2] The point is that Defendants fail to meet their burden of establishing federal enclave jurisdiction because they do

---

[2] As one example, Plaintiff alleges that Defendants and others working in Carlsbad produced and covered up "scientific errors and research misconduct" related to the WIPP. [Doc. 1-2] at 12. This alleged misconduct gives rise to Plaintiff's racketeering claim.

not allege, much less show, that all pertinent events occurred on KAFB. There is no federal enclave jurisdiction.

**IT IS THEREFORE ORDERED, ADJUDGED, AND DECREED** that Plaintiff's Motion for Remand [Doc. 22] be **GRANTED**.

**IT IS FURTHER ORDERED** that Defendants' Motion to Dismiss [Doc. 4] is **DENIED**.

**IT IS FURTHER ORDERED** that this action is **REMANDED** to the Second Judicial District Court.

**IT IS SO ORDERED.**

_____
**STEPHAN M. VIDMAR**
**United States Magistrate Judge**
**Presiding by Consent**